**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 12 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID MARTIN PRICE and
ROSEMARY DENISE PRICE,

      Plaintiffs-Appellants,

v.

WILLIAM E. COCHRAN, Officer;
OFFICER HELMKAMP; OFFICER
WEMPE, and OFFICER GRAYSON,

      Defendants-Appellees.

No. 02-3213
(D. Kansas)
(D.C. No. 00-CV-2193-GTV)

**ORDER AND JUDGMENT** *

Before **HENRY** , **ANDERSON** , and **O'BRIEN** , Circuit Judges.

David Martin Price and his wife Rosemary Denise Price filed this pro se 42

U.S.C. § 1983 action against four Topeka, Kansas police officers alleging a

violation of their Fourth and Fourteenth Amendment rights. The Prices' claims

arise out of the arrest of Mr. Price and the search of their home on May 19 and

---

* This order and judgment is not binding precedent, except under the doctrines of
res judicata, collateral estoppel, and law of the case. The court generally
disfavors the citation of orders and judgments; nevertheless, an order and
judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

20, 1998. After initially entering a default judgment in favor of the Prices, the district court vacated that judgment, allowed the defendant officers to answer the complaint, and permitted the parties to engage in discovery. The court then granted summary judgment in favor of the defendant officers on all of the Prices' claims.

The Prices now appeal the district court's decision to vacate the entry of default. They also challenge the district court's denial of their motions to amend the complaint, its rulings on several discovery issues, its grant of summary judgment to the defendant officers, and its award of costs to the defendants.

We are not persuaded by the Prices' arguments, and we affirm the district court's decisions for substantially the same reasons set forth in its well-reasoned orders.

## I. BACKGROUND

Because the relevant facts are thoroughly set forth in the district court's June 6, 2002 Memorandum and Order, see Rec. doc. 156, we summarize them only briefly.

### A. The Reported Assault on May 19, 1998

On the evening of May 19, 1998, the plaintiff Rosemary Price called the Topeka Police Department to report that a teenage neighbor had exposed himself to her and made an obscene remark. The Topeka Police Department also received

a call reporting that Mr. Price had assaulted a teenager. During the call, the dispatcher heard gunshots in the background. Based on that information, several officers, including the defendants, proceeded to the Prices' home and the surrounding neighborhood.

At a gas station down the street from the Prices' home, Officer Cochran encountered five teenage boys and a woman named Bawdi Edgett. He interviewed Ms. Edgett and the two oldest boys—Antonio and Mike Thomas.

Ms. Edgett told Officer Cochran that she had gone to the Prices' neighbors' house to pick up the teenagers. There, Mr. Price had started yelling at them, telling Antonio Thomas that he wanted to fight him. After Mike Thomas told Mr. Price that he would not allow Mr. Price to fight Antonio, Mr. Price hit Mike in the jaw. Antonio then grabbed a cooler and struck Mr. Price in the head, and the brothers began throwing rocks at Mr. Price. According to Ms. Edgett, Mr. Price yelled that he "had something for them." Rec. doc. 143 (Cochran report at 2). Ms. Edgett then heard a gunshot behind her. She turned around and saw Mr. Price pointing a gun in their direction and firing two shots.

Officer Cochran then interviewed Antonio and Mike Thomas. The Thomas brothers gave a similar account but reported that Mr. Price had fired three shots into the air rather than pointing the gun directly at them. See id. The teenagers subsequently repeated the same version of events to Officer Grayson.

-3-

Officer Wempe interviewed two neighbors—Allen and Adrian Perkins— who corroborated significant aspects of Ms. Edgett's and the Thomas brothers' account. Both men reported that he heard the disturbance and saw Mr. Price walk into the street and fire a pistol twice in the air. See id. (Wempe affidavit, at 2).

Officer Pat McLaughlin interviewed Rocky Chilson, another neighbor of the Prices. Mr. Chilson reported that he had not seen Mr. Price with a gun, but he explained that he had been inside his house when he heard gunshots.

Officer McLaughlin also interviewed the Prices. They denied that Mr. Price had fired a gun. Mrs. Price added that they did not have a gun in the house. In an affidavit submitted in response to the defendants' motion for summary judgment, Mrs. Price stated that it was Mike Thomas who had fired the gun at her. Rec doc. 149, attach. 30, at 4.

Officer Grayson then placed Mr. Price under arrest for aggravated assault and battery. After the Prices refused consent to search their house for a gun, Officer Grayson transported Mr. Price to the Shawnee County jail. Officer Cochran prepared an affidavit in support of a search warrant, obtained approval from an assistant district attorney, and presented the warrant application to the duty judge.

While the officers waited for the search warrant to issue, they informed Mrs. Price that she would not be allowed to enter the house until the search

-4-

warrant was executed.  While she waited, Mrs. Price observed the officers looking for shell casings in the front yard, looking through a window into the living room, and taking photographs.

During her deposition, Mrs. Price testified that Officer Cochran told her that he wanted her to stick around in order to answer any questions that might arise.  In an affidavit filed in response to the defendants' summary judgment motion, Mrs. Price offered a somewhat different account, stating that Officer Cochran "advised me not to leave as he may have other questions for me." Id. at 8.  She added that "I felt that this was a direct [p]olice [o]rder, therefore, I was fearful of being arrested if I did not comply." Id.  Subsequently, Mrs. Price asked the officers if she could enter the home to use the restroom.  She explained in deposition testimony that she made this request because she had a disability and "I didn't want to leave my home.  In other words, I didn't want to leave the premises." Rec. doc. 143, Rosemary Price dep., at 40.  The officers allowed Ms. Price to enter the home, along with a female officer as an escort, where she used the restroom, got a drink, and tended to the family pets.

About four hours after the initial call to the police, Topeka police officers returned with a search warrant. Inside the Prices' residence, the officers found no weapons, but they did discover a .22 caliber bullet on a nightstand next to a bed.

In July 1998, a county magistrate issued a probable cause finding as to the assault and battery charges against Mr. Price. However, no witnesses appeared on the day of trial and, upon the motion of the prosecution, the court dismissed the case.

### B. The Prices' § 1983 Action

The Prices filed this 42 U.S.C. § 1983 action in April 2000. They alleged that the defendant officers had violated their Fourth and Fourteenth Amendment rights by falsely arresting and maliciously prosecuting Mr. Price, falsely imprisoning Mrs. Price by detaining her outside her home while they waited for a search warrant, and by searching the home without probable cause. In December 2000, the Prices filed a motion for default judgment, noting that the defendants had failed to answer the complaint. The district court granted the motion and entered judgment against the defendants on January 22, 2001.

On February 5, 2001, the defendant officers filed a motion to vacate the default judgment. They argued that they had not been properly served. The district court conducted an evidentiary hearing. Each of the defendants testified that he had been served with a summons but not with the complaint. The defendants' attorney argued that because the Prices had not served the complaint upon the defendants, the Prices had not obtained proper service under Fed. R. Civ. P. 4 (c)(1), which requires that "[a] summons shall be served together with a

-6-

copy of the complaint." In response, the Prices presented testimony from an associate in a community organization to which they belonged. The associate stated that she had served the defendants with both the summons and the complaint. The district court found the defendant officers' testimony credible and granted the motion to vacate the default judgment.

The parties proceeded with discovery. The district court denied the Prices' motion for a protective order limiting the scope of inquiry at their depositions. The court granted Topeka Police Chief Ed Klump's motion to quash a subpoena duces tecum in which the Prices sought copies of criminal investigation and personnel records in the possession of the Topeka Police Department.

Subsequently, the defendant officers filed a motion for summary judgment on all of the Prices' claims, and the district court granted the motion. The court reasoned that the defendant officers had probable cause to arrest Mr. Price and that Mr. Price could not prevail as a matter of law on either his false arrest or malicious prosecution claims. As to the alleged wrongful detention of Mrs. Price while the officers waited for the search warrant, the court reasoned that the officers had acted lawfully:

> Defendants' actions in keeping Mrs. Price out of the home while they waited on the search warrant were tailored to a specific law enforcement need. They only sealed off the home for the amount of time it took to obtain the search warrant . . . . Defendants had sufficient legal cause . . . to

restrict [Mrs. Price's] access, and Mrs. Price's false imprisonment claim must fail.

Rec. doc. 156, at 20-21 (Dist. Ct. Memorandum and Order, filed June 6, 2002). Finally, as to the Prices' illegal search claim, the court reasoned that the search warrant for Prices' home was based upon probable cause. The court also reasoned that, even assuming that the officers' inspection of the Prices' yard was a constitutional violation, the violation was de minimus and could not support a § 1983 claim.

## II. DISCUSSION

On appeal, the Prices argue that the district court erred in (1) vacating the default judgment; (2) denying their motion for a protective order and granting the Topeka police chief's motion to quash their subpoena duces tecum; (3) granting summary judgment to the defendants; (4) denying their motion for leave to amend the complaint; and (5) awarding costs to the defendants. For the reasons set forth below, we discern no error in the district court's decisions.

### A. Decision to Vacate Default Judgment

The Prices challenge the district court's decision to vacate the default judgment against the defendants, arguing that the defendants' attorney "testified to [b]ad [f]aith [a]ffidavits" and deliberately concealed facts establishing that the

-8-

defendants were properly served. Aplts' Br. at 22. In advancing this argument, the Prices face a high hurdle: we may not reverse the district court's decision vacating the default judgment unless that decision is "'clearly wrong.'" <u>Nikwei v. Ross Sch. of Aviation, Inc.</u>, 822 F.2d 939, 941 (10th Cir. 1987) (quoting <u>Barta v. Long</u>, 670 F.2d 907, 910 (10th Cir. 1982)). "Setting aside a . . . default judgment is addressed to the sound discretion of the [district] court, and [that court is] given a great deal of latitude in exercising [its] discretion as to whether the movant carried his burden of proving that the default and default judgment were entered erroneously." <u>Id.</u> (internal quotation marks omitted). "[C]onsiderable deference is given the trial judge's determination regarding the default judgment since he is the person most familiar with the circumstances of the case and, thus, is in the best position to evaluate the good faith and credibility of the parties at the hearings." <u>Id.</u>

Here, the Prices have failed to demonstrate that the district court was clearly wrong in vacating the default judgment. As noted above, each of the defendants testified that he had been served with only a summons—not the summons and the complaint, as required by Fed. R. Civ. P. 4 (c)(1). The district court found that testimony to be credible. Moreover, upon review of the record, we have identified no evidence supporting the Prices' conclusory allegation that the defendants and their attorney acted in bad faith.

As this court has noted, "[p]ersonal service under Rule 4 serves two purposes: notifying a defendant of the commencement of an action against him and providing a ritual that marks the court's assertion of jurisdiction over the lawsuit." Okla. Radio Assocs. v. FDIC, 969 F.2d 940, 943 (10th Cir. 1992). Thus, "Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." Id. Absent proper service of the complaint on the defendants, the district court lacked jurisdiction over the defendant officers. See Chester v. Green, 120 F.3d 1091 (10th Cir. 1997). Accordingly, the district court did not clearly err in vacating the entry of default judgment.

B. Discovery Rulings

The Prices contend that the district court erred in denying their motion for a protective order and in granting the motion to quash their subpoena duces tecum seeking records from the Topeka Police Department. We review both the district court's decision regarding a protective order and its decision to quash a subpoena for an abuse of discretion. Harris Mkt. Research v. Marshall Mktg. & Communications, Inc., 948 F.2d 1518, 1526 (10th Cir. 1991); EEOC v. Dillon Cos., 310 F.3d 1271, 1274 (10th Cir. 2002).

We discern no abuse of discretion in the district court's orders, which cogently set forth the reasons supporting both of these discovery rulings. As to the protective order requested by the Prices, the court explained that "[t]he subjects over which Plaintiffs seek protection in their impending depositions include both the arrests and prosecutions that form the basis for Plaintiffs' civil rights claims" and that the Prices had failed to establish that "disclosure of the information" would result in a "clearly defined and very serious injury." Rec. doc.105, at 4 (Dist. Ct. Order, filed Nov. 13, 2001) (internal quotation marks omitted). As to the subpoena duces tecum, the court explained that none of the Topeka Police Department Records sought by the Prices "deal with the incident out of which the current lawsuit arises" and none of the records "involve city personnel or police officers involved in th[at] incident." As a result, the court concluded, the Prices had failed to establish that the requested documents were relevant. Rec. doc. 137 at 3 (Dist. Ct. Order, filed Feb. 15, 2002). The conclusory arguments in the Prices' appellate brief are insufficient to establish an abuse of discretion in the district court's discovery rulings.[1]

---

[1] Moreover, the Prices have also failed to establish that these alleged discovery errors prejudiced their substantial rights. See Frontier Refining, Inc. v. Gorman-Rupp Co., 136 F.3d 695, 705 (10th Cir. 1998) (stating that discovery errors require reversal only if they affected a party's substantial rights).

-11-

## C. Summary Judgment Ruling

Next, the Prices challenge the district court's grant of summary judgment to the defendant officers on a number of grounds. They contend that the district court erroneously applied a heightened standard of evidence and a heightened pleading standard in assessing the parties' evidence. The Prices also argue that the district court failed to consider admissible evidence that they proffered in response to the defendants' motion and that the court erroneously acted as a finder of fact. Finally, the Price's point to statements in Mrs. Price's affidavit regarding her false arrest claim and contend that the district court improperly discounted these statements. We engage in de novo review of the district court's decision, applying the standards set forth in Fed. R. Civ. P. 56. Ledbetter v. City of Topeka, 318 F.3d 1183, 1187 (10th Cir. 2003).

We are not persuaded by the Prices' arguments. As to the allegedly erroneous heightened evidence and heightened pleading standard, we note that the cases on which the Prices rely concern the appropriate standard in assessing the pleadings, not the proper standard in deciding a summary judgment motion. See Crawford-El v. Britton, 523 U. S. 574 (1998); Currier v. Dornan, 242 F.3d 905, 911-17 (10th Cir. 2002). In any event, the record establishes that the district court did apply the proper standard for summary judgment motions—whether "'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" Rec. doc. 156, at 8 (District Court Memorandum and Order, filed June 6, 2002) (quoting Fed. R. Civ. P. 56(c)). As to the Prices' more specific challenges, we consider them in relation to each of their substantive claims: false arrest, malicious prosecution, false imprisonment, and illegal search.

1. False Arrest Claim

A warrantless arrest violates the Fourth Amendment if it is not supported by probable cause. Thompson v. City of Lawrence, 58 F.3d 1511, 1515 (10th Cir 1995). "Probable cause exists if the arresting officer has knowledge of facts and circumstances which are reasonably trustworthy and sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Id. "[T]he probable cause standard . . . requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of a warrantless arrest and detention." Romero v. Fay, 45 F.3d 1472, 1476-77 (10th Cir. 1995).

Here, Mr. Price contends that the defendant officers lacked probable cause to arrest him because the witnesses who identified him as the man who fired the

gun on the evening of May 19, 1998 were not credible. Mr. Price points to the witnesses' criminal records and to their alleged motive to fabricate the allegations. Mr. Price notes that he and his wife had complained about some of the witnesses' criminal conduct and that these complaints had led some of the witnesses to be evicted from the neighborhood. Mr. Price adds that they had previously filed complaints about the Topeka Police Department, and he asserts that these complaints led the defendant officers to arrest him without probable cause.

Upon review of the record, we conclude that the evidence submitted by Mr. Price does not undermine the district court's conclusion that the defendant officers had probable cause to arrest him. As the defendants note, the Thomas brothers (the victims of the alleged assault) each stated that Mr. Price struck Antonio Thomas in the mouth with his fist and fired shots at them. Allen and Adrian Perkins each stated that they saw Mr. Price run into the street and fire a gun into the air. Rocky Chilson added that he had heard gunshots.

Accordingly, this case is not analogous to those in which courts have found probable cause to be lacking. See Romero, 45 F.3d at 1476-77 & n. 2 (collecting cases). The officers did not fail to interview readily available witnesses who could have exonerated Mr. Price, and they did not rely on rumor or hearsay in concluding that probable cause existed.

Moreover, as the district court observed, the evidence invoked by Mr. Price is insufficient to create controverted issues of material fact. The evidence regarding the alleged criminal records of witnesses is simply an unauthenticated list of case numbers. Even assuming that these case numbers are criminal convictions, they do not undermine a finding of probable cause based upon eyewitness testimony. See Rec doc. 156 at 16 (District Court Order, filed June 6, 2002) (citing United States v. Dennis, 625 F.2d 782, 791 (8th Cir. 1980)). Finally, as the district court observed, the statements in Mrs. Price's affidavit are also insufficient to controvert the probable cause finding. According to Mrs. Price, she overheard an officer say that two witnesses had told him that they had not seen Mr. Price with a gun. However, Mrs. Price's statement is hearsay, and it is too vague to undermine the "reasonably trustworthy" evidence that Mr. Price had committed an assault and battery. Thompson, 58 F.3d at 1515.

Accordingly, we conclude that the district court properly granted summary judgment on Mr. Price's false arrest claim.

2. Malicious Prosecution Claim

A plaintiff may state a Fourth Amendment claim under § 1983 by alleging that he or she has been subjected to a malicious prosecution. See Taylor v. Meacham, 82 F.3d 1556, 1561-62 (10th Cir. 1996). "[O]ur circuit takes the

common law elements of malicious prosecution as the 'starting point' for the analysis of the § 1983 malicious prosecution claim, but always reaches the ultimate question . . . of whether the plaintiff has proven a constitutional violation." Id. Under Kansas law, a plaintiff must establish the following elements in order to prevail upon a malicious prosecution claim: "(1) that defendant initiated, continued, or procured the proceeding of which complaint is made; (2) that defendant in doing so acted without probable cause; (3) that defendant must have acted with malice; (4) that the proceedings terminated in favor of plaintiff; and (5) that plaintiff sustained damages." Lindeman v. Umscheid, 875 P.2d 964, 974 (Kan. 1994).

Here, we agree with the district court that the evidence establishing that the defendant officers had probable cause to arrest Mr. Price also establishes that there was probable cause to prosecute him for assault and battery. Moreover, as the district court further observed, the Prices' contention that the Topeka Police Department retaliated against them because of their criticisms of the Department does not undermine the finding of probable cause. The evidence on which the Prices rely consists of unauthenticated police memoranda that discuss the Prices' prior complaints. Such unauthenticated documents are inadmissible and none of those documents supports the Prices' contention that these particular defendant

officers acted with retaliatory intent rather than properly relying on the statements of the witnesses.

Accordingly, we conclude that the district court properly granted summary judgment to the defendants on the Prices' malicious prosecution claim.


3.  False Imprisonment Claim

The district court interpreted Mrs. Price's false imprisonment claim to incorporate the Fourth Amendment's prohibition of unreasonable seizures.  It therefore granted summary judgment to the defendant officers on the basis of the Supreme Court's decision in Illinois v. McArthur, 531 U.S. 326 (2001).

There, the Supreme Court held that the police did not violate a suspect's Fourth Amendment rights by restricting his access to his home for a two-hour period while they obtained a search warrant.  The police only allowed the suspect to enter his home on two or three occasions during that period, sending a police escort with him and permitting him to get cigarettes and make phone calls.

In concluding that there was no Fourth Amendment violation, the Court noted that the restriction imposed on the suspect was justified by a legitimate law enforcement interest:  the police had probable cause to believe that the suspect's home contained evidence of a crime and contraband, and they had good reason to fear that the suspect would destroy evidence unless he was restrained.  Moreover,

the restriction was limited in scope. In particular, the police "made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy." Id. at 332. "They neither searched the trailer nor arrested [the suspect] before obtaining a warrant." Id. Instead, they left the suspect's home and belongings intact until a neutral magistrate issued a warrant. Finally, the police imposed the restriction for only a limited period of time.

Applying McArthur, the district court reasoned that "the [d]efendant[] [officers'] actions in keeping Mrs. Price out of the home while they waited on the search warrant were tailored to a specific law enforcement need." Rec. doc. 156, at 20. Moreover, the court reasoned, officers prevented Mrs. Price from entering her home only for the amount of time that it took to obtain a search warrant.

In their appellate brief, the Prices do not specifically challenge the district court's application of McArthur. Instead, they argue that the court erred in refusing to consider an affidavit submitted by Mrs. Price in response to the defendant's summary judgment motion. In that affidavit, Mrs. Price stated that while she waited outside her home, "Officer Cochran advised me not to leave as he may have other questions for me. I felt that this was a direct Police Order, therefore, I was fearful of being arrested if I did not comply." Rec. doc. 149, attach. 30, at 21.

In refusing to consider this statement, the district court observed that the statement contradicted Mrs. Price's prior deposition testimony that she "didn't want to leave my home. In other words, I didn't want to leave the premises." Rec. doc. 143 (Rosemary Price dep), at 40. The court applied the principle that "'a contrary affidavit . . . [may be disregarded] when . . . it constitutes an attempt to create a sham fact issue.'" Rec. doc. 156, at 21 (quoting Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)). Accordingly, discounting Mrs. Price's affidavit, the court concluded that she "remained at her home by her own choice." Rec. doc. 143, at 22.

We review a district court's decision to exclude evidence at the summary judgment stage for abuse of discretion, see Sports Racing Servs., Inc. v. Sports Car Club, 131 F.3d 874, 894 (10th Cir. 1997), and we discern no such abuse of discretion here. In its summary judgment order, the district court explained that "Mrs. Price had full opportunity to explain in her deposition that she was afraid to leave her home. Her alleged fear [as reported in her subsequent affidavit] was not newly discovered evidence, and there was no apparent confusion concerning her earlier statement [that she did not want to leave her home]." Rec. doc. 156, at 22. The Prices have failed to present any arguments in their appellate brief that undermine the district court's reasoning.

Accordingly, we conclude that the district court did not abuse its discretion in refusing to consider Mrs. Price's statements in her affidavit. We further conclude that the court properly granted summary judgment to the defendant officers on Mrs. Price's false imprisonment claim.

4. Illegal Search Claim

The Prices have presented no additional arguments that undermine the district court's reasoning in granting summary judgment against them on their illegal search claim. As the district court observed, the defendant officers obtained a search warrant based on the same information that led to Mr. Price's arrest, as well as additional information that witnesses had observed him entering and leaving the house after allegedly shooting a gun. That information provided probable cause for the issuance of the warrant, and the search of the Prices' house thus comported with the Fourth Amendment. According, we conclude that the district court properly granted summary judgment to the defendant officers on the Prices' illegal search claim.

## D.  Denial of Motion to Amend the Complaint

The Prices contend that the district court erred in refusing to allow them to amend their complaint.  They allege that there were "additional unknown officers" involved in the constitutional violations.  Aplt's Br. at 18.

As the defendants observe, the district court did not deny the Prices the opportunity to amend the complaint.  Instead, in a September 15, 2000 order, the court merely observed that naming unknown officers as defendants was not appropriate.  The court also observed that the Prices had obtained summons for a number of individuals who were not named as defendants and that serving them with the summons and complaint would be of no effect.  Moreover, a subsequent scheduling order allowed the Prices until June 1, 2001 to file a motion to join additional parties or amend the pleadings.   The Prices did not file a motion to amend the complaint or add additional parties.

Accordingly, the Prices' argument regarding a lack of opportunity to amend the complaint is without merit.


## E.  Award of Costs

Finally, the Prices challenge the district court's award of "damages" and "costs" to the defendant officers.  See Aplt's Br. at 23.  Contrary to their contentions, the district court did not award damages.   Instead, the court's

judgment stated that the defendants could recover costs. That decision is supported by Fed. R. Civ. P. 54(d)(1), which states that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs."

We review the district court's award of costs for an abuse of discretion. Tilton v. Capital Cities/ABC, Inc., 115 F.3d 1471, 1476 (10th Cir. 1997). The Prices have identified no law or facts indicating that the district court abused its discretion in awarding costs to the defendant officers.


### III. CONCLUSION

Accordingly, we AFFIRM the district court's grant of summary judgment to the defendant officers, as well as the other decisions noted above.


Entered for the Court,


Robert H. Henry
Circuit Judge

.


-22-